UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

AMBER HIXSON,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )       Case no. 1:24-cv-00076-SNLJ
WALMART, INC.,                         )
                                       )
            Defendant.                 )
                                       )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Walmart, Inc.'s motion for summary

judgment.  [Docs. 32-34].  The motion is fully briefed and ripe for disposition.  [Docs.

40-43].  For the reasons stated below, the motion will be granted in part and denied in

part.

## I.   PROCEDURAL BACKGROUND

Plaintiff Amber Hixson filed this action alleging a claim for premises liability

against defendant Walmart, Inc.  [Doc. 1].  Defendant filed an answer denying the

substance of plaintiff's complaint and alleging 4 affirmative defenses.  [Doc. 7].

Defendant now filed a motion for summary judgment alleging that plaintiff cannot

establish all the necessary elements of her claim for premises liability; or, in the

alternative, that defendant is entitled to partial summary judgement on plaintiff's

allegations that she suffered a TFCC tear and a shoulder injury.  [Doc. 34].  Plaintiff

opposes defendant's motion and alleges that a genuine issue of material fact exists as to

whether defendant's negligence caused plaintiff's injuries.  [Doc. 40].

## II.    FACTUAL BACKGROUND

The following facts are undisputed except where indicated[1]:

Dexter Walmart:  The Walmart Supercenter in Dexter, Missouri (hereinafter "Dexter Walmart") is a retail store that sells general merchandise and grocery items. [Doc. 41-1 at 09:24-10:08].  Customers of the Dexter Walmart are allowed to travel down the store's aisles to select merchandise and may bring items they select from the sales floor to registers at the front of the store to make purchases.  [*Id.* at 15:07-16:02].  The Dexter Walmart has two separate areas with cash registers where customers can checkout:  a self-checkout and a cashier-assisted checkout section.  [Doc. 35-2 – WM Video 2(A)].

Checkout Aisle 1 is an aisle in the cashier-assisted checkout area of Dexter Walmart.  [Doc. 35-1 – WM Video 1(A); Doc. 35-2 – WM Video 2(A)].  The entrance to Checkout Aisle 1 has a rack filled with magazines that are available for purchase.  [*Id.*]. The entrance to Checkout Aisle 1 also has a cooler filled with drinks that are available for purchase.  [*Id.*].  Checkout Aisle 1 has a counter or merchandise shelf that runs the length of the aisle that has items for purchase, like trading cards.  [*Id.*].  Checkout Aisle 1 runs

---

[1] Plaintiff's response to defendant's statement of uncontroverted material facts raises multiple objections based upon a theory that defendant's reference to allegations in the complaint, of deposition testimony, and of entries in medical records are not in and of themselves material facts. The Court overrules these objections.  A summary judgment motion may be properly made in reliance on the pleadings, depositions, answers to interrogatories, and admissions on file.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The nonmoving party must then go beyond the pleadings and, by the use of affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate what specific facts exist to establish a genuine issue of material fact for trial.  *Id.*

perpendicular to an aisle that runs across the front of the store and leads to the customer service desk (or the "front aisle").  [Doc. 41-1 at 34:19-23; Doc. 35-1; Doc. 35-2].

Events of August 4, 2021:  On August 4, 2021, plaintiff was accompanied by her daughter and went to Dexter Walmart for her daughter to receive a physical evaluation for the upcoming volleyball season at the medical clinic located inside the Dexter Walmart.  [Doc. 33-5 at 10:4-11].  Plaintiff had shopping to do, and her daughter sat outside of the clinic on a bench facing Checkout Aisle 1.  [Doc. 41-3 at 13:13-14:10].  Plaintiff shopped for a permanent marker and masking tape from the sales floor of the Dexter Walmart before heading to the front of the store to purchase the items in the self-checkout section.  [*Id.* at 14:13-16:2].  As plaintiff was making her way to the self-checkout section, Ms. Ashley Hunsaker, a Dexter Walmart employee, logged in at Checkout Aisle 1 and announced that she could help someone on one.  [Doc. 41-1 at 24:9-11].

When plaintiff heard Ms. Hunsaker announce that she was available to check out customers, plaintiff walked from the self-checkout area to Checkout Aisle 1.  [Doc. 41-1 at 24:06-25:24 and 38:16-22; Doc. 41-3 at 14:13-16:12].  When plaintiff reached the entrance to Checkout Aisle 1, she slipped and fell backward.  [*Id.*].  When plaintiff fell backward, she slammed her head on the shelf of merchandise in Checkout Aisle 1 and ultimately landed on her right arm and right wrist.  [*Id.*].  Immediately after the fall, plaintiff reported to Dexter Walmart employees that her wrist and elbow were hurting.  [Doc. 33-1; Doc. 41-3 at 20:25-21:10].  A customer incident report was completed.  [Doc. 33-1].  After the fall, Dexter Walmart employees wiped up the area with paper

3

towels and Ms. Hunsaker determined plaintiff fell on a green grape.  [Doc. 41-1 at 38:09-38:22].  The Dexter Walmart sells green grapes every day.  [*Id.* at 26:10-13].

Ms. Hunsaker was working at Dexter Walmart on August 4, 2021, as a department manager.  [Doc. 41-1 at 11:2-6; 19:9-15].  Ms. Hunsaker provided testimony about what Dexter Walmart employees generally did at the Dexter Walmart location.  [*Id.* at 21:17-23:13].  Ms. Hunsaker testified that when Dexter Walmart employees open a closed cash register to serve customers in the cashier-assisted checkout section of the store, they ensure that the area they are working in is clean, tidy, actively usable.  [*Id.* at 21:17-23:13].  Ms. Hunsaker testified that when Dexter Walmart employees open a closed cash register to serve customers as cashiers, the employees walk the area to make sure it is safe.  [*Id.*].  Ms. Hunsaker also testified that when Dexter Walmart employees are working at registers in the cashier-assisted checkout section of the store, they perform sweeps of the area where they are working by using a dustpan and broom to sweep the area.  [*Id.*].  Checkout Aisle 1 had paper towels at the conveyor belt attached to the register that employees use to clean the conveyor belts.  [*Id.* at 38:5-11].

On August 4, 2021, Ms. Hunsaker walked across the front aisle of the store and passed the exit of Checkout Aisle 1, which is on the far side of the aisle from the entrance.  [Doc. 41-1 at 34:19-23; Doc. 35-1 at 11:59:57-12:00:47; Doc. 35-2 at 11:59:57-12:00:47].  While plaintiff contends that Ms. Hunsaker never looked down and never observed the portion of the ground in Checkout Aisle 1 where plaintiff later fell, the testimony of Ms. Hunsaker is that she did, in fact, look in the general direction down the registers as she walked across the front aisle.  [Doc. 41-1 at 34:15-35:6; 40:2-9].

4

Other than the walk across the front aisle when she looked down the register lanes, Ms. Hunsaker testified that she otherwise did not recall walking the area to see if there was any debris or anything on the floor.  [Doc. 41-1 at 22:13-15; 34:15-35:6; 40:2-9].  She did testify that with Checkout Aisle 1 being a speedy check out, it's generally pretty simple to make sure that it was tidy before opening because there is only one tiny little space to check.  [*Id*. at 22:9-12].

In addition to Ms. Hunsaker's testimony, plaintiff's daughter testified that she did not observe any debris or potential hazards in the area in front of her.  [Doc. 33-5 at 17:2-18:15].  Video surveillance shows plaintiff walking through Checkout Aisle 1, without issue, less than 5 minutes before her slip and fall incident in Checkout Aisle 1.  [Doc. 35-1].  That same surveillance video shows 2 customers walking down Checkout Aisle 1, without issue, less than a minute prior to plaintiff's incident.  [*Id.*].  Another camera running video surveillance shows a third customer examining an item in his cart near the entrance of Checkout Aisle 1 approximately 10 seconds before plaintiff enters the video and falls.  [Doc. 35-2].

Injuries:  Prior to her fall at Dexter Walmart on August 4, 2021, plaintiff does not recall ever having injured or experienced pain in the right elbow, right wrist, or her right shoulder.  [Doc. 41-4 at ¶9].  After attempting to manage the pain on her own, on August 6, 2021, plaintiff went to the emergency room at Southeast Health Center of Stoddard County where she complained of right shoulder pain radiating into her hand following the fall at the Dexter Walmart.  [Doc. 41-5].  In the emergency room, plaintiff was diagnosed with a closed fracture of the right radial head with mild intra-articular movement.  [*Id.*].

Plaintiff continued to seek treatment for her pain in her right elbow, right wrist, and right shoulder.  [Docs. 41-6, 41-7, 41-8, 41-9, 41-10].  The parties dispute whether the shoulder pain and shoulder treatment after February 9, 2022, were related to plaintiff's fall at Dexter Walmart.  [Doc. 33-7].

Defendant's retained medical expert, Dr. Russ Cantrell, M.D., believes that plaintiff sustained a broken right elbow as a result of the fall at the Dexter Walmart.  [Doc. 41-2 at 36:3-7].  Dr. Cantrell also believed that plaintiff initially did have a sprain of her shoulder.  [*Id.* at 36:8-14].  The parties dispute whether plaintiff's treatment and pain in her shoulder from February 9, 2022, to the present is related to her fall at the Dexter Walmart.

Dr. Cantrell testified in his deposition that it was a possibility that a fall on an outstretched arm can cause a TFCC tear.  [Doc. 41-2 at 46:20-23].  While Dr. Cantrell opined that to a reasonable degree of medical certainty that plaintiff's TFCC tear was not caused by the incident at Dexter Walmart on August 4, 2021 [Doc. 41-2 at 36:21-37:12; 37:17-38:11], he did agree that it was possible that plaintiff had a pre-existing asymptomatic TFCC tear that the fall then made symptomatic.  [Doc. 41-2 at 37:3-8; 47:3-9].  Plaintiff had an injection in the radiocarpal joint near the TFCC on or about March 3, 2022.  [Doc. 33-7].  The parties dispute whether plaintiff continues to have pain in her right wrist, shoulder, and elbow.

As a result, plaintiff filed this complaint for damages against defendant for premises liability on April 15, 2024.  [Doc. 1 at ¶¶33-41].

## III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962); Fed. R. Civ. P. 56(a).  The Court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inference in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue…Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325.  Instead, "the burden on the moving party may be discharged by 'showing'…that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nomoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042

(8th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87)).  "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment.  *Quinn v. St. Louis Cnty*., 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'"  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" – where this is no "'genuine issue for trial'" – summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

## IV.   DISCUSSION

As previously stated, the complaint is based upon plaintiff's claims against defendant for premises liability.  Defendant's motion for summary judgment alleges two separate issues:  (1) whether defendant lacked knowledge of the alleged dangerous condition; and, (2) whether plaintiff has failed to establish causation for the majority of her alleged injuries.

### A.  Did defendant lack knowledge of the alleged dangerous condition?

To prevail in a slip and fall case, the plaintiff must prove:  (1) a dangerous condition existed on the defendant's property which involved an unreasonable risk; (2) the defendant knew or by using ordinary care should have known of the condition; (3) the defendant failed to use ordinary care in removing or warning of the danger; and (4) the

8

plaintiff was injured as a result.  *Phillips v. Drury Southwest*, 524 S.W.3d 228, 230 (Mo. App. E.D. 2017) (citing *Rycraw v. White Castle Sys., Inc.*, 28 S.W.3d 495, 499 (Mo. App. E.D. 2000)).  Missouri follows the traditional rule that a plaintiff in a slip and fall must establish that defendant had actual or constructive notice of a dangerous condition. *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001); see e.g*., Hople v. Wal-Mart Stores*, 219 F.3d 823, 824 (8th Cir. 2000).  Prior to 1989, a plaintiff had to prove that a hazard had been present longer than twenty minutes to present a case on the issue of constructive notice.  *Id.* at 699; see *Grant v. National Super Markets, Inc.*, 611 S.W.2d 357, 359 (Mo. App. E.D. 1980).  However, in 1989 the Missouri Supreme Court held that the length of time a hazard has been on the ground no longer is a conclusive factor in determining whether a plaintiff has presented a submissible case on the issue of constructive notice.  *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 781 (Mo. banc 1989).

Under current Missouri law, "the inquiry of whether the danger existed long enough that the store should have reasonably known of it (constructive notice) is made in light of the fact that the store had notice that certain dangers arising through customer involvement are likely to occur, and the store has a duty to anticipate them." *Fogelbach*, 270 F.3d at 699 (quoting *Martin v. Wal-Mart Stores, Inc.*, 183 F.3d 770, 772 (8th Cir. 1999)).  The liability in Missouri is predicated on the foreseeability of the risk and the reasonableness of the care extended toward business invitees.  *Hople*, 219 F.3d at 824.

Whether a risk is reasonably foreseeable is a question of fact to be determined by the totality of circumstances, including the business' method of merchandising and operating, as well as the nature of the article causing the injury.  *Sheil*, 781 S.W.2d at

9

780.  Many businesses choose to operate under a method of self-service merchandising, whereby they allow customers to walk through the aisles and handle the merchandise themselves.  Missouri has recognized that this method of merchandising makes it "more likely that items for sale and other foreign substances will fall on to the floor."  *See Head v. Nat'l Super Markets, Inc.*, 902 S.W.2d 305, 307 (Mo. App. E.D. 1995) (quoting *Sheil*, 781 S.W.2d at 781).  In choosing to operate under a self-service method of merchandising, the business is "charged with the knowledge of the foreseeable risks inherent in such a mode of operation," regardless of whether the hazard arises from its own products being misplaced on the floor "or some other device or condition."  *Spencer v. Kroger Co*., 941 F.2d 699, 703 (8th Cir. 1991).

Defendant offers the following proof that it did not have constructive notice of the grape on the floor in Checkout Aisle 1:  plaintiff waked through Checkout Aisle 1, without issue, less than 5 minutes before her slip and fall incident; 2 other customers walked down Checkout Aisle 1 less than a minute before plaintiff's slip and fall incident; another customer was examining an item in a cart near the entrance to Checkout Aisle 1 approximately 10 seconds before plaintiff enters the video and falls; plaintiff's daughter who was sitting outside of the clinic on a bench facing Checkout Aisle 1 never observed any debris or potential hazards; defendant's employee Ms. Hunsaker walked across the front aisle of the store and passed the exit of Checkout Aisle 1 before the slip and fall incident; and, Ms. Hunsaker testified that she did, in fact, look in the general direction down the registers as she walked across the front aisle.

In opposition, Plaintiff asserts that defendant sells green grapes every day; that

Ms. Hunsaker never looked down and never observed the portion of the ground in Checkout Aisle 1 where plaintiff later slipped and fell; that Ms. Hunsaker testified that she otherwise did not recall walking the area to see if there was any debris or anything on the floor before she opened Checkout Aisle 1; that defendant's employees are to ensure that before they open a cash register to serve customers in the cashier-assisted checkout section of the store that they ensure the area is in clean, tidy, actively usable condition; and, that defendant's employe are to walk the area to make sure it is safe before they open a cash register to serve customers in the cashier-assisted checkout section.

Upon review, the Court cannot say as a matter of law that defendant did not have notice of the grape falling on to the floor in Checkout Aisle 1.  The grape was obviously an item that could be purchased in the store.  In addition, although defendant's employees were charged with responsibility for checking the floor for safety, cleanliness, and an actively usable condition, there is discrepancy in the testimony about whether defendant's employee specifically undertook those activities before opening Checkout Aisle 1 and inviting plaintiff to walk through.  Finally, plaintiff fell at the entrance to Checkout Aisle 1; and, the green grape was found and cleaned up after her fall.  This evidence indicates that the item was on the floor in an area where employees had the opportunity to observe it.  Further, although not a conclusive factor, there is no definitive evidence as to when, or for how long, the grape had been there.  While defendant would like to argue the surveillance videos clearly support its position that it did not have constructive notice, this court disagrees.  The videos are unclear and grainy; and, they certainly don't allow for anyone to see a green grape on the floor.

11

Based upon this evidence, as well as evidence regarding defendant's method of operation, there is a genuine issue of material fact from which a jury could conclude that defendant had notice of the dangerous condition on the floor of the store.  Given the fact intensive nature of this case, the Court finds that the granting of summary judgment would be inappropriate.

**B.  Has plaintiff failed to establish causation for the majority of her alleged injuries?**

A plaintiff has the burden of proving a causal connection between the alleged negligence and the injury sustained.  *Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo. App. W.D. 1993).  When plaintiff fails to prove a causal connection between the defendant's alleged negligence and plaintiff's injuries, the plaintiff may not recover damages.  *Stroot v. Taco Bell Corp.*, 972 S.W.2d 447, 449 (Mo. App. E.D. 1998) (*citing Vann v. Town Topic, Inc.*, 780 S.W.2d 659, 661-62 (Mo. App. W.D. 1989)).

It is not always essential to have medical testimony, as a causal connection between an accident and an injury can be inferred in cases where there is a visible injury, or a sudden onset of an injury, or any injury that as a matter of common knowledge follows the act.  *Williams v. Jacobs*, 972 S.W.2d 334, 340 (Mo. App. W.D. 1998).  A visible injury is one in which there is evidence of an obvious wound like a cut, bruise or immediate bleeding.  *Id.*  Under the sudden onset doctrine, a causal connection may be inferred if the injury "develops coincidentally with the negligent act, such as broken bones…, immediate, continuing back pain…, or an obvious wound…" *Id.* (quoting *Demoulin v. Kissir*, 446 S.W.2d 162, 165 (Mo. App. 1969).  The testimony of a lay

12

witness is sufficient to establish the nature, cause and extent of an injury "when the facts fall within the realm of lay understanding." *Williams v. Jacobs*, 972 S.W.2d at 340. However, when the injury is a "sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding." *Id.* (quoting *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 704 (Mo. App. 1973)). Evidence of medical expenses and subjective complaints of pain will not suffice in proving the existence or nature of an alleged injury which is not readily discernable. *Pihsiou Hsu v. Mound City Yellow Cab Co.*, 624 S.W.2d 61, 63 (Mo. App. E.D. 1981).

Defendant argues that because plaintiff has no expert witness, she is unable to establish the required element of causation for her TFCC injury and her shoulder injury.[2]

Plaintiff's TFCC tear was diagnosed using highly scientific techniques and her damages were the result of diagnostic injections and subsequent surgeries. Defendant's expert also raises a question regarding the potential that the TFCC tear was pre-existing and caused by plaintiff's history of playing and coaching volleyball. Therefore, the sudden onset doctrine does not apply, and plaintiff is required to show through expert testimony that her TFCC tear was caused by the slip and fall in defendant's store. Unfortunately, plaintiff has not and cannot establish through expert testimony that her TFCC tear was caused by her slip and fall because she has not designated an expert

---

[2] Defendant does not contest that plaintiff's fractured elbow falls under the sudden onset doctrine; and, therefore, does not require expert testimony as to causation.

witness and has defended this motion for summary judgment with nothing more than her

own testimony regarding the injury.  That is insufficient.

As to plaintiff's shoulder injury, plaintiff did make some initial reports of shoulder

pain after the August 2021 slip and fall incident.  However, plaintiff did not see a

shoulder specialist or start physical therapy until February 2022.  Defendant's expert

witness opined that plaintiff most likely had a sprain of her shoulder initially after the slip

and fall incident.  However, in his opinion, he thought that such a sprain resolved in

"fairly short order".  Specifically, defendant's expert opined that:

> Q:    And so it is your opinion to a reasonable degree of medical
> certainty any treatment or pain Mrs. Hixson experienced in
> her shoulder from February 9, 2022, to present is unrelated to
> the incident at Walmart?
>
> A:    That would be my opinion, yes.
>
> [Doc. 34-1 at 36:8-20].

Plaintiff has offered no evidence to defend against this expert opinion.  Therefore, this

Court finds that causation has been established for plaintiff's right shoulder injury only

for the time-period from August 4, 2021, through February 9, 2022.  From February 9,

2022, to the present, plaintiff has failed to establish the required element of causation

between the incident at defendant's store and her shoulder injury and treatment.

Based on the foregoing, this Court agrees with defendant that plaintiff is unable to

establish the required element of causation between the August 4, 2021, incident and (1)

her TFCC tear and (2) her shoulder injury and treatment for the period from February 9,

2022, to the present.  Accordingly, defendant's alternative request for partial summary

14

judgment is granted.

## V.    <u>Conclusion</u>

In conclusion, this Court finds that a genuine issue of material fact exists as to defendant's constructive notice of the alleged dangerous condition that precludes the granting of defendant's motion for summary judgment.  However, the Court finds that no genuine issue of material fact exists as to plaintiff's failure to present sufficient causation expert testimony between the August 4, 2021, incident and (1) her TFCC tear and (2) her shoulder injury and treatment for the period from February 9, 2022, to the present, such that partial summary judgment should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. 32] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**SO ORDERED** this 12th day of November, 2025.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE